United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAPHAEL GEORGE RAYFORD,
Plaintiff,

v.

F. MEDINA, et al.,
Defendants.

Case No. 14-cv-01318-VC

**ORDER GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO DISMISS**

Re: Dkt. No. 13

Plaintiff Raphael Rayford, an inmate at Salinas Valley State Prison ("SVSP"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 asserting claims involving a July 21, 2013 excessive force incident against officers and employees of the prison. Defendants F. Medina, E. Sanchez, E. Brown, G.R. Salazar, T. Tomasian and K. Chase move for summary judgment based on Rayford's failure to exhaust administrative remedies[1] and Tomasian and Salazar also move to dismiss the claims against them. In the reply, Chase withdraws her motion for summary judgment. As discussed below, summary adjudication is granted on the claims against F. Medina, Sanchez and Brown and is denied on the claims against Salazar and Tomasian. The motion to dismiss is denied.

**DISCUSSION**

I. Summary Judgment Motion Based on Lack of Exhaustion

A. Legal Standard

The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

---

[1] Rayford asserts claims for retaliation and excessive force against F. Medina. F. Medina only moves for summary judgment on the retaliation claim. J. Carmona also does not move for summary judgment on the excessive force claim against him.

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. To meet this standard, prisoners must not only lodge a formal complaint, but also pursue it through each stage of the administrative process in "compliance with an agency's deadlines and other critical procedural rules" as a precondition to bringing suit in federal court. *Id*. at 90. The requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.*

Procedurally, failure to exhaust under the PLRA is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In the Ninth Circuit, a motion for summary judgment is the proper vehicle to decide whether a prisoner has exhausted administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc). A defendant has the burden to prove that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1172. Once the defendant meets that burden, the burden shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* To determine the issue of exhaustion, all the facts in the record must be viewed in the light most favorable to the non-moving party. *Id.* at 1173 (citing *Liberty Lobby*, 477 U.S. at 247-50).

B. CDCR Procedures for Administrative Appeals

The California Department of Corrections and Rehabilitation ("CDCR") provides any inmate under its jurisdiction the right to appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). To initiate an appeal, the inmate must submit a CDCR Form 602 describing the issue to be appealed and the relief requested to the appeals coordinator's office at the institution. *Id.* § 3084.2(a)-(c). An inmate is limited to one issue or related sets of issues for each appeal; appeals combining unrelated issues are rejected and returned to the inmate with an explanation that the issues are

United States District Court
Northern District of California

deemed unrelated and only may be raised separately. *Id.* § 3084.2(a)(1). An inmate must submit the appeal within 30 calendar days of: (1) the occurrence of the event or decision being appealed; or (2) first having knowledge of the action or decision being appealed; or (3) receiving an unsatisfactory departmental response to an appeal. *Id.* § 3084.8(b). An inmate may submit only one appeal every 14 calendar day, unless the appeal is accepted as an emergency appeal. *Id.* § 3084.1(f). An appeal may be rejected if it is missing documents necessary for substantiating allegations made in the appeal, such as disciplinary reports and incident reports. *Id.* §§ 3084(h); 3084.6(b)(7) . CDCR's appeal process consists of three formal levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. *Id.* §§ 3084.7, 3084.8. A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal. Code Regs. tit. 15, § 3084.1(b).

Defendants submit the following additional evidence about the CDCR appeals process. Inmate appeals are assigned a log number by the inmate's institution and are logged into a computer-based tracking system which contains the following information: the name and CDCR number of the inmate filing the appeal; appeal log number; date received; grievance issue; review level; date completed at each level of review; and disposition. E. Medina Decl. ¶ 5.[2] The information is entered into the system when an appeal is received from an inmate or a response is provided to an inmate and is kept in the course of regularly conducted business. *Id.* Inmate appeals that are screened out as a cancellation or rejection are recorded in the computer system. Id. ¶ 6. If an appeal is cancelled or rejected, the appeals office completes a CDCR Appeals Screening Form 695 that explains to the inmate the reason or reasons for the action and what the inmate can do to correct the deficiency. *Id.* (citing Cal. Code Regs. tit. 15, § 3084.5(b)(3)).

At the request of the Office of the Attorney General, a grievance activity report was

[2] E. Medina is the Appeals Coordinator at SVSP. Defendant F. Medina is a correctional officer at SVSP.

generated for Rayford's appeals. E. Medina Decl. ¶ 7. This report lists each appeal Rayford submitted to the SVSP appeals office and it shows that, between April 17, 2013 and March 21, 2014, Rayford submitted fourteen appeals. *Id.*,Ex. A.

C. Rayford's Claims and Relevant Appeals

1. Claim Against F. Medina

In his complaint, Rayford alleges that F. Medina harassed him on a regular basis between April 27, 2013 and July 21, 2013 in retaliation for filing a complaint against prison staff. In its Order of Service, the Court stated that this allegation appeared to state a cognizable First Amendment retaliation claim against F. Medina.

Under the regulations, Rayford was required to submit an appeal addressing F. Medina's retaliatory acts within thirty days of the date of their occurrences. E. Medina Decl. ¶ 4; Cal. Code Regs. tit. 15, § 3084.8(b). E. Medina's search of Rayford's appeals shows that Rayford submitted three appeals between April 27, 2013 and August 20, 2013, the relevant time period, and none of them addressed F. Medina's retaliatory conduct. E. Medina Decl. ¶ 8, Exs. B-D. This evidence satisfies the defendants' burden of showing that administrative remedies were available and Rayford did not exhaust them. *See Albino*, 747 F.3d at 1171-72. Now Rayford must come forward with evidence showing that, in his particular case, the usually available remedies were unavailable. *See id.*

In his opposition, Rayford asserts that he is excused from exhausting his appeals against F. Medina because "he submitted to the mail two 602 appeals raising claim [sic] to the harassment and retaliation acts made by F. Medina. However, as stated in the complaint, the appeals were not forwarded to the appeals office therefore making the system completely unavailable to him. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014)." Dkt. No. 34-3 at 36.

Rayford's terse allegation that his appeals were not forwarded to the appeals office, even if viewed as true, is insufficient to meet his burden of showing that the appeals procedure was effectively unavailable to him. Most importantly, Rayford has submitted no evidence in support of his assertion—he has not submitted copies of the appeals, identified the people who received them, or stated when he submitted them. In short, he has not shown what efforts he made to have

his appeals processed. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010) (although acts by prison officials that deter an inmate from exhausting administrative remedies may make those remedies effectively unavailable, the inmate must demonstrate he took reasonable and appropriate steps to exhaust his claim and was precluded from doing so). Furthermore, Rayford does not assert or provide documentation showing that he attempted to exhaust higher level appeals after he realized his lower level appeals had not been delivered. *See Davis v. Evans*, 2008 WL 818534, at *4 (N.D. Cal.) (even if an inmate's attempt to exhaust a lower level appeal has not succeeded, he must show that he attempted to submit and exhaust higher level appeals).

Accordingly, summary adjudication on this claim is granted in favor of F. Medina.

2. Claim Against Sanchez

In his complaint, Rayford alleges that, on May 20, 2013, he told Sanchez that he was afraid that F. Medina would harm him and asked Sanchez to move him to a different housing unit. Allegedly, Sanchez responded, "Why should I reward bad behavior?" In its Order of Service, the Court found that, liberally construed, these allegations appeared to state a cognizable claim against Sanchez for failing to protect Rayford from unconstitutional conduct.

Rayford was required to submit an inmate appeal within thirty days of his May 20, 2013 conversation with Sanchez, but he filed no appeal during this time. E. Medina Decl., Exs. A, B. Four months later, on September 24, 2013, Rayford submitted inmate appeal SVSP-13-5117, in which he stated that, on September 19, 2013, Sanchez refused to remove himself as an investigating officer of Rayford's excessive force complaint and that he wanted Sanchez (referred to in the appeal as Sgt. Chavez) removed as the investigator because he "was the first informed of the misconduct of the subordinates and failed to right the wrong, thus setting the attack into motion on 7-21-13." *Id.*, Ex. E. Defendants argue that this appeal does not exhaust Rayford's claim against Sanchez because (1) Rayford withdrew it and, thus, did not appeal it to the third level of review and (2) the allegations in the appeal did not alert prison officials to Rayford's Eighth Amendment claim against Sanchez.

In response, Rayford argues he was asserting a continuing violation against Sanchez and, thus, the thirty-day time limit does not apply. Dkt. No. 23-4 at 12-13; Dkt. No. 34-2 at 36-37.

Rayford also argues he is excused from appealing to the third level because Lt. Martinez, when interviewing Rayford about his appeal, demanded that Rayford "sign off" on it. Rayford states that he did not want to withdraw the appeal, but did so because he was fearful of Lt. Martinez and also believed that the appeal was being addressed in Sacramento. *Id.*

Even accepting Rayford's continuing violation argument and viewing as true his statement that he withdrew the appeal because of Lt. Martinez's statements, the appeal is still insufficient to exhaust his federal claim because its allegations were insufficient to alert prison staff to the nature of the wrong for which Rayford sought redress, namely that Sanchez ignored Rayford's May 20, 2013 plea for protection from F. Medina. *See* Cal. Code Regs. tit. 15, § 3084.2(a) (an appeal must describe the specific issue under appeal and the relief requested); *Griffin v. Arapio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (grievance must alert prison officials to the nature of the wrong for which redress is sought). Rayford's cryptic allegation that Sanchez "failed to right the wrong, thus setting the attack in motion" would not have alerted prison officials to Rayford's federal failure to protect claim.

Accordingly, summary adjudication on this claim is granted in favor of Sanchez.

3. Claim Against Brown

In his complaint, Rayford alleges that, on July 21, 2013, when F. Medina sprayed him with pepper spray, Brown gave F. Medina a second can of spray and a respirator.

On August 9, 2013, Rayford submitted inmate appeal SVSP 13-4368 in which he described the actions of F. Medina and Carmona in the pepper spray incident and requested that CDCR terminate their employment and that they each pay him $10,000 in damages. E. Medina Decl. ¶ 8(c), Ex. D. Rayford did not mention that Brown or any other officer participated in the incident. *Id.* Defendants argue that this appeal did not exhaust Rayford's claim against Brown because it did not alert prison officials to Brown's alleged actions in the pepper spray incident or the relief requested against him.

In response, Rayford argues that his claim against Brown is exhausted because he described Brown's involvement in the July 21, 2103 pepper-spray incident during his video-recorded interview about the incident that was conducted pursuant to title 15, section 3268.3(e) of

the California Code of Regulations. Dkt. No. 23 at 5-6; Dkt. No. 34-4 at 38-39.

Section 3268.3, entitled, "Reporting and Investigating the Use of Force for Field Staff," provides the following: (1) any CDCR employee must report to a supervisor and document any incident in which the employee uses force or observes the use of force; (2) a video recording must be made of a person's allegation of unnecessary or excessive force; and (3) an effort must be made at all levels of review to reach a judgment about whether the staff's actions were in compliance with regulations, procedure and law. Cal. Code Regs. tit. 15, §§ 3268.3 (a), (d)(2), (e)(1) and (e)(2).

Rayford's argument that the investigation of his allegations of excessive force pursuant to § 3268.3 exhausted his administrative remedies is foreclosed by *Panaro v. City of North Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005). In *Panaro*, the plaintiff also argued that he constructively exhausted administrative remedies by participating in an internal affairs investigation. *Id.* The Ninth Circuit explained that, although the internal investigation of officer misconduct resulted in adverse action against the officer, the only potential remedies available to the plaintiff were through the administrative grievance procedure and, because he did not exhaust those, summary judgment properly was granted in favor of the defendants. *Id.*

The same reasoning applies here. Rayford's video interview did not afford him a remedy against Brown and, thus, did not exhaust administrative remedies for his claim against Brown. Accordingly, summary adjudication on this claim is granted in favor of Brown.

4. Claim Against Tomasian

In his complaint, Rayford alleges that the officers involved in the pepper-spray incident were supervised by Tomasian and that, after the incident, Tomasian covered up the incident by treating it as arson perpetrated by Rayford. In furtherance of the cover-up, Rayford alleges Tomasian told F. Medina and Carmona how to treat the incident as arson in their incident reports and Tomasian took photographs of Rayford's cell without showing the back of the cell where the pepper-spraying took place.

Defendants state that, although Rayford filed several appeals naming Tomasian, he failed properly to exhaust them. Rayford argues that he exhausted his claim against Tomasian in appeals

SVSP-14-0647 and SVSP-14-1003. Dkt. No. 23 at 12, Exs. 4, 5.

On January 23, 2014, Rayford submitted appeal SVSP-14-0647,[3] which was screened out on January 29, 2014 because Rayford had not attached necessary supporting documents—a copy of the incident report and a copy of the "D.A. Memo." Dkt. No. 23-4 at 2. Rayford resubmitted the appeal and it was again screened out because he had not attached additional supporting documents—"the final copy of the first page of the RVR." Dkt. No. 23-4 at 3.

Rayford states that he took many actions to exhaust this appeal. For instance, on February 7, 2014, he filed a letter of complaint to the Chief of Appeals, J.A. Zamora, explaining the problems he was having getting this appeal filed; on March 20, 2014, he resubmitted the appeal with the requested documents; and, on March 24, 2014, he submitted a written request for an update of the appeal. He states that, on March 25, 2014, the appeals office responded that the appeal had been returned to him, but he had not received it. On March 26, 2014, Rayford submitted an appeal to the appeals supervisor regarding his lost appeal and the appeals office replied, "obtain a TRO and we will provide you with a printout." On April 4, 2014, Rayford submitted a 602 appeal based on the lack of cooperation by the appeals office employees and he never received a response to this appeal. Rayford argues that his attempts to submit this appeal, which were thwarted by the prison officials, effectively made the appeals process unavailable to him.

Rayford's evidence, when taken as true, shows that he attempted to satisfy the prison officer's requests for specific documents many times and that, after he met these requests, his appeal was screened out. Although he does not submit a copy of his appeal, he submits copies of the screening letters rejecting his appeal and rejections of his appeals asserting that his original appeal was not returned to him.

Rayford's evidence satisfies his burden of showing the appeals procedure was effectively unavailable to him. The defendants' argument that Rayford cannot show this appeal exhausted his claim against Tomasian because he does not submit the appeal is unpersuasive because: (1) they

[3] Neither party submits a copy of the appeal.

United States District Court
Northern District of California

have not submitted the appeal to show that it does not address his claim against Tomasian; and (2) taking Rayford's evidence as true, the prison did not return his appeal to him, so that, in effect, the prison thwarted his ability to submit the appeal as evidence.

Accordingly, Tomasian's motion for summary adjudication is denied.

5. Claim Against Salazar

In his complaint, Rayford alleges that Salazar held a disciplinary hearing on the falsified arson reports at which he did not allow Rayford to question witnesses, to present rebuttal evidence or to see the nine photographs of the arson scene submitted as evidence against him.

Defendants submit evidence that Rayford filed two appeals naming Salazar. They argue, however, that these appeals did not exhaust his claim against Salazar because they properly were screened out for appealing multiple issues and Rayford did not correct this deficiency. Rayford argues that these appeals did not contain multiple issues.

In appeal SVSP-14-1003, Rayford wrote the following:

> Appellant alleges that Lt. G.R. Salazar is engaged in unethical misconduct where he conspired with Sgt. E. Sanchez, Sgt. T. Tomasian, Sgt. E. Brown, CO F. Medina and CO J. Carmona. . . . The appellant has to prove that these named employees used illegal force against him, staged an arson scene and filed two false reports against him. During both rule [sic] violation hearings of the false reports Lt. Salazar blatantly denied appellant every means to present an adequate defense for hisself [sic] against the charges. Lt. Salazar denied the appellant the right to ask questions to the reporting employees, witness employees, respondent employees. Appellant was denied the right to the 9 photos used against him as evidence to charge and convict him.

E. Medina Decl., Ex. N. As relief, Rayford requested access to the 9 photos. *Id.*

The crux of this appeal clearly is directed at Salazar's conduct at the disciplinary hearings and not at the individuals involved in the excessive force incident. A careful reading of the appeal shows that Rayford included the names of the other individuals to explain what he had to prove at the disciplinary hearing and why it was necessary for him to question witnesses and to see the evidence against him. This conclusion is borne out by Rayford's requested relief—for access to the nine photos which Salazar refused to give him, not for relief directed at the other individuals. Therefore, this appeal was improperly screened out for including too many issues in one appeal.

For a plaintiff to fall within the exhaustion exception based on improper screening of a grievance, he must show: (1) that he filed one or more grievances that, if pursued through all levels of appeals, would have exhausted the claim he seeks to pursue in federal court; and (2) that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Rayford satisfies both requirements. Appeal SVSP-14-1003, if pursued through all levels of appeals, would have exhausted his federal claim and, as discussed above, prison officials screened out the grievance for reasons unsupported by the regulations. Therefore, Rayford has succeeded in producing evidence to show that the generally existing and available remedies were effectively unavailable to him. Salazar's motion for summary adjudication is denied.

II. Motion to Dismiss Claims Against Tomasian and Salazar

A. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In considering whether the complaint is sufficient to state a claim, the district court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). However, the court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to it or documents the complaint necessarily relies on and whose authenticity is not contested. *Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

B. Claim Against Tomasian

Rayford's complaint alleges that F. Medina, with the assistance of Carmona and Brown, sprayed Rayford with pepper spray and that Tomasian, who supervised these individuals, covered-up the pepper spraying by staging an arson scene, by telling the officers to falsely report that Rayford had committed arson and by taking photographs to support the false reports. Citing the Court's Order of Service, which found that the complaint did not state cognizable claims based on the allegations of staging a crime scene or falsifying reports, the defendants argue that the only cognizable claim against Tomasian is for excessive force, arising from his role as the perpetrators' supervisor. They conclude that this claim must be dismissed because it is based on supervisory liability, which is not cognizable under § 1983.

In its Order of Service, the Court cited *Sprouse v. Babcock*, 870 F.2d 450, 452 (9th Cir. 1989), which held that, standing alone, an allegation of the falsity of charges does not establish the violation of a constitutional right. *Sprouse* relied on *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2nd Cir. 1986), which held that an allegation that false evidence was planted by a prison guard did not state a constitutional claim where procedural due process protections were provided. *Id.* However, the court explained that such allegations may state a due process claim if the plaintiff was not provided procedural due process at the hearing based on the false evidence. *Freeman*, 808 F.2d at 951.

Under the reasoning in *Freeman*, Rayford's allegations against Tomasian appear to state a cognizable due process claim because Rayford also alleges that his procedural due process rights were violated at the disciplinary hearing addressing the false reports. The due process claim is not based on Tomasian's supervisory role because the complaint alleges that he actively participated by directing the officers to file false reports and by taking photographs to support the false reports.

Therefore, Tomasian's motion to dismiss is denied.

C. Claim Against Salazar

Rayford's complaint alleges that, at the disciplinary hearing on the two allegedly falsified reports, Salazar violated Rayford's due process rights by preventing Rayford from questioning witnesses, presenting rebuttal evidence or viewing the nine photographs used as evidence against

him. Citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1098 (9th Cir. 1986) (overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)), the defendants argue that these allegations are insufficient to state a due process claim because Rayford fails to allege the existence of a constitutionally protected liberty interest.

Interests that are protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they involve an interest protected by state law. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A state may not impose such changes without complying with minimum requirements of procedural due process. *Id.* at 484.

Deprivations authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., provide the inmate a right to avoid it, and (2) the liberty in question is one of "real substance." *Id.* at 477-87. Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487. Whether a restraint is "atypical and significant" under *Sandin* requires a case by case consideration. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

The defendants' argument that there is no liberty interest in avoiding placement in administrative segregation is premature on a motion to dismiss because a factual analysis is required to determine whether the restraint imposed an atypical and significant hardship on Rayford.

Furthermore, Rayford's allegation that the defendants' actions will prevent him from obtaining early release is not too attenuated to invoke procedural due process protections. In his complaint, Rayford alleges that he is a non-violent, non-serious three strikes petty theft offender who was awaiting resentencing and release from prison pursuant to Proposition 36, enacted in

California in 2012, and that the guilty finding at his disciplinary hearing caused him to be ineligible for such resentencing and release.

In *People v. Bradford*, 227 Cal. App. 4th 1322, 1327-28 (2014), the court explained Proposition 36, the Three Strikes Reform Act of 2012, as follows:

> Under Proposition 36, a defendant who has two or more prior serious and/or violent felonies (strikes) is not necessarily subject to an enhanced "third strike" sentence if the current conviction is not for a serious or violent felony. Assuming a defendant . . . does not fall within one of four enumerated eligibility exceptions, he or she will receive a sentence consistent with that imposed in a second-strike case. . . .

With his opposition, Rayford submits documentary evidence showing that a court hearing had been scheduled to consider his resentencing and early release under Proposition 36 and that this was vacated after the 2013 disciplinary hearing. *See Lee*, 250 F.3d at 688 (on motion to dismiss, court may consider documents relied on by complaint). This suggests a real possibility of early release, which was affected by the guilty finding at his disciplinary hearing. These allegations are sufficient, at the pleading stage at least, to show that Rayford possessed a protected liberty interest that warranted procedural due process protections.

Accordingly, Salazar's motion to dismiss is denied.

**CONCLUSION**

Based on the foregoing, the Court orders as follows:

1. Summary adjudication based on failure to exhaust administrative remedies is granted on the retaliation claim against F. Medina, on the failure to protect claim against Sanchez and on the excessive force claim against Brown.

2. Summary adjudication is denied on the claims against Tomasian and Salazar.

3. Tomasian and Salazar's motion to dismiss is denied.

4. Tomasian, Salazar and the non-moving defendants' motion for summary judgment on the merits of the claims is due twenty-eight days from the date of this order. The motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If the defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the

summary judgment motion is due. All papers filed with the Court shall be promptly served on Rayford.

At the time of filing the motion for summary judgment, the defendants shall comply with the Ninth Circuit's decision in *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), and provide Rayford with notice of what is required of him to oppose a summary judgment motion.

Rayford's opposition to the motion for summary judgment shall be filed with the Court and served on the defendants no later than twenty-eight days after the date on which Defendants' motion is filed.

Before filing his opposition, Rayford is advised to read the notice that will be provided to him by the defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Rayford is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's summary judgment motion. Such evidence may include declarations sworn under penalty of perjury from himself and other witnesses, and copies of documents authenticated by sworn declaration. Rayford will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

The defendants shall file a reply brief no later than fourteen days after the date Williams' opposition is filed.

The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

5. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to the defendants to depose Rayford and any other necessary witnesses confined in prison.

6. It is Rayford's responsibility to prosecute this case. Rayford must keep the Court informed of any change of address by filing a separate paper with the clerk headed Notice of Change of Address, and must comply with the Court's orders in a timely fashion. Failure to do so

may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

7. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than ten days prior to the deadline sought to be extended.

**IT IS SO ORDERED**.

Dated: February 20, 2015

VINCE CHHABRIA
United States District Judge